IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**
FEB 2 7 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel. )
)
JERMAINE JAMESON #K-67511 )
(Full name and prison number) )
(Include name under which convicted) )
)
PETITIONER )  CASE NO. 04C 1547
)  (Supplied by Clerk of this Court)
vs. )
)
EUGENE McADORY )  JUDGE COAR
(Warden, Superintendent, or authorized )
person having custody of petitioner) )  MAGISTRATE JUDGE NOLAN
)
RESPONDENT, and )  **FILED**
)  MAR 1 9 2004
(Fill in the following blank only if judgment )  MICHAEL W. DOBBINS
attacked imposes a sentence to commence in the )  CLERK, U.S. DISTRICT COURT
future) )  FEB 2 7 2004
)
ATTORNEY GENERAL OF THE STATE OF )  Case Number of State Court Conviction:
)
Lisa Madigan - Illinois )  97-CR-11019-02
(State where judgment entered) )

## PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County, Illinois

2. Date of judgment of conviction: July 1, 1998

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   Two Counts of Murder, and unlawful possession of a firearm

4. Sentence(s) imposed: Natural Life + 3 years

5. What was your plea? (Check one)
   (A) Not guilty    ( X )
   (B) Guilty        (   )
   (C) Nolo contendere (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( )    Judge only ( X )

2. Did you testify at trial?    YES ( )    NO ( X )

3. Did you appeal from the conviction or the sentence imposed?    YES ( X )    NO ( )

   (A) If you appealed, give the

       (1) Name of court: Illinois Appellate Court 1 Dist.

       (2) Result: Denied

       (3) Date of ruling: June 23, 2000

       (4) Issues raised: Statement Being Involantory

   (B) If you did not appeal, explain briefly why not:

       N/A

4. Did you appeal, or seek leave to appeal, to the highest state court?    YES ( X )    NO ( )

   (A) If yes, give the

       (1) Result: Denied

       (2) Date of ruling: October 4, 2000

       (3) Issues raised: Statement Being Involantary

   (B) If no, why not: N/A

5. Did you petition the United States Supreme Court for a writ of *certiorari*?    Yes ( )    No ( X )

   If yes, give (A) date of petition: N/A    (B) date *certiorari* was denied: N/A

2

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( x )   NO (  )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court: Circuit Court of Cook County, Illinois

    B.  Date of filing: January 6, 2001

    C.  Issues raised: Ineffective Assistance of trial, and appellate counsel. Petitioner was also denied due process & right to jury trial in light of Apprendi v. New Jersey

    D.  Did you receive an evidentiary hearing on your petition?    YES (  )   NO ( X )

    E.  What was the court's ruling? N/A

    F.  Date of court's ruling: N/A

    G.  Did you appeal from the ruling on your petition?    YES (X)   NO (x)

    H.  (a) If yes,  (1) what was the result? DENIED

                    (2) date of decision: 3\29\02

        (b) If no, explain briefly why not: N/A

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

        YES (X)   NO (  )

        (a) If yes,  (1) what was the result? Denied

                    (2) date of decision: 10/2/02

        (b) If no, explain briefly why not: N/A

3

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus? YES (X) NO ( )

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1. Nature of proceeding    Post-Conviction & Relief from Judgment

        2. Date petition filed    Post-Conviction 2/2/01 & Relief from Judgment 11/29/01

        3. Ruling on the petition    Both petitions was denied

        3. Date of ruling    3/30/01 & 2/8/03

        4. If you appealed, what was the ruling on appeal?    Both appeals were affirmed 3/29/02 & 4/24/03

        5. Date of ruling on appeal    3/29/02 & 4/24/03

        6. If there was a further appeal, what was the ruling?    P.L.A. for both appeals was denied by the ILL. Supreme Court.

        7. Date of ruling on appeal    10/2/02 & 10/7/03

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( ) NO (X)

    A. If yes, give name of court, case title and case number:    N/A

    B. Did the court rule on your petition? If so, state

        (1) Ruling:    N/A

        (2) Date:    N/A

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

YES ( ) NO (X)

If yes, explain:    N/A

   N/A

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one  Petitioner was denied Due Process & his Right to Counsel in the following:
Supporting facts (tell your story briefly without citing cases or law):

Petitioner was denied due process & right to counsel when he was held for several hours throughout the night and early morrning hours, frustrating his Aunt's attempt to arrange for for an adult relative (or counsel) interested in his welfare, while at the same time deproving petitioner of food, water and sleep for nine hours, and the "so called youth office" (who was also an interagation officer) showed no interest in petitioner's rights. Therefore the confession given by Mr. Jameson (who was a juvenile) was made under coercive and abuesive circumstances, rendering allege confession involuntary.

(B) Ground three  Petitioner was denied Due Process & Effective Assistance of Counsel:
Supporting facts:

Petitioner was denied due process & effective assistance of counsel when his trial counsel fail to interview petitioner's aunt and call her as a witiness, in regards to petitioner being denied his right to counsel, or to have an adult present while he was being interagated.
Although petitioner's aunt was at the poilice station while he was being interagated, she was not allowed to be in the room with Mr. Jameson and she was told to go home.
(See affidavit of Mr. Jameson's Aunt attached)

(C) Ground four  Petitioner was denied Due Process and Right to a Jury Trial:
Supporting facts:

Petitioner was denied due process & right to jury trial, pursuant to the United State's Supreme Court's holding in Apprenid v. New Jersey, when the trial judge imposed a natural life sentence for offenses that contained a sentencing range of 20 years to 60 years.

5

(D) Ground three Petitioner was denied Due Process & Equeal Protection under the law: when
Supporting facts:

Petitioner was denied due process and equeal protection under the law, because he was sentenced under a statute that is unconstitutional on its face (730 ILCS 5/5-8-1(a)(1)) because there is no provisions in 5-8-1 for a jury to determine whether or not a natural life sentence should be imposed, only the judge was allowed to make that determination in violation of Apprendi v. New Jersey. Section 5-8-1(a)(1)(c)(ii) (West 1998) was also unconstitutional because it was contained in Public Act 89-203 (pub. Act 89-203 (eff. July 21, 1995)) which violated the "single subject" rule found in Article IV. Section 8, of the Illinois constitution (Ill. Const. 1970, art IV § 8).

(E) Ground four Petitioner was denied Due Process, Equeal Protection & Effective Asst. Counsel:
Supporting facts:

Petitioner was denied due process, equeal protection and effective assistance of counsel, when Honorable Judge John E. Morrissey abuesed his judicial discretion in the preparation of Mr. Jameson going to trial, and in the sentencing hearing held pursuant to 5-8-1(a)(1)(c)(ii), in light of the twin objectives of article I. Section 11 of the United States and Illinois Constitution (1970 Art. I § 11), because he was denied due process and equal protection of the law in regard of procedural and substantive Law.

(F) Ground two Petitioner was denied Due Process, Equal Protection & Effective Asst. Counsel:
Supporting facts:

Petitioner was denied due process, equal protection & effective assistance of counsel, because of the unconstitutionality of Section 5/5-8-1(a)(1)(c)(ii) of West 1998 of 730 ILCS, is inherently unfair to minor's at sentencing where the statute only allows for the consideration of the seriousness of the offense to be consider in aggravation without a determination being made, as to whether the minor possess rehabilitative potential, or whether a term of natural life could be an appropriate penalty for a minor. The statute is inherently unfair because it mandates that a minor shall be sentence to a mandatory life sentence without rehabilitation being considered.

6

(G) Ground three <u>Petitioner was denied Effective Assistance of Appellate Counsel</u>
Supporting facts:

Petitioner was denied effective assistance of counsel when his appellate counsel fail to argue the above stated claims (that was argued on collateral review).

(H) Ground four _____
Supporting facts:

2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?
YES (X)   NO ( )

3. If you answered "NO" to question (16), state <u>briefly</u> what grounds were not so presented and why not:

7

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing   Unknown

(B) At arraignment and plea   Unknown

(C) At trial   Stuart Katz, Cook County Public Defenders Office

(D) At sentencing   Stuart Katz, Cook County Public Defenders Office

(E) On appeal   Michael H. Orenstein, 100 W. Randolph St. Chicago, Il 60601, P.D. office

(F) In any post-conviction proceeding   R.H.R. Silvertrust, 69 W. Washington, Chicago, Il, P.D. offic

(G) Other (state): _____

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( x )

Name and location of the court which imposed the sentence:   Cook County Circuit Court of Illinois

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____          _____
            (Date)                   Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

*Jermaine Jameson*
(Signature of petitioner)

*Reginald K-67511*
(I.D. Number)

Menard C.C., P.O. Box 711, Menard, Il 62259
(Address)

8

# AFFIDAVIT OF JERMAINE JAMESON

I, JERMAINE JAMESON, being first duly sworn upon my oath, deposes and states, under the penalties of perjury, as provided by law, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedures, that the Statements set forth in this instrument, are true and Correct, Except as to Matters herein Stated to be on information and belief, and as to Such Matters, I belief that said and same to be true.

1. That, I the affiant Jermaine Jameson submits this affidavit, and contends that on March 25, 1997 at the time of Affiant Arrest in Matters related to the above Captioned Cause, Affiant was of the age of Sixteen years of age.

2. That, I the Affiant JERMAINE JAMESON also contends that upon request of this Honorable Court, and if necessary, the affiant can submit additional documentation, evidence and testimony of affiant Mother, that the affiant was indeed only of the age of Sixteen-years of age.

Further Affiant Sayeth Not.

Signed by Affiant:

/s/ Jermaine Jameson *K67511
JERMAINE JAMESON Affiant
Reg. No. K-67511
P.O. Box 711
Menard. Corr. Ctr.
Menard, IL 62259-0711

Date: 2/11/04

Subscribed And Sworn before Me On this 11th day of February, 2004
/s/ Regina Summers
NOTARY PUBLIC


"OFFICIAL SEAL"
Regina Summers
Notary Public, State of Illinois
My Commission Exp. 07/21/2005

October 1, 2000
Diahann Flowers
Page 1 of 2

I, Diahann Flowers being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto...

On March 27, 1997 I received a call from my nephew, Jermaine Jameson. Jermaine explained there was a shooting on the north side in which his name was implicated. He assured me he was innocent and asked me to take him to the police station to clear his name. I agreed and told him I would be there in an hour.

When we arrived at the police station, we walked up to the front desk where two police officers were standing. I explained to the officers that my nephew was implicated in a shooting on the north side and he was here to clear his name. One of the officers turned to Jermaine and asked him his name, while the other one picked up the phone and called someone from the back. Shortly after, another officer appeared from the back office area and began asking us questions about the alleged shooting. He was trying to determine what shooting we were talking about. Once the officer identified the crime, he escorted Jermaine and I to a back office for more questioning. However, once we got to the back, we learned that the officer who handles this case works out of another station and would be arriving shortly. In the meantime, we were asked general questions about ourselves (such as: name, address, phone number, etc) to begin the paperwork. During this brief questioning, we were not asked about the crime in question. Once the officer was done, we were asked to wait in the room until the detective (handling the case) arrived.

The detective arrived approximately 45 minutes later; He introduced himself, informed us that the case was transferred to another police district, and instructed Jermaine to come with him. At this moment, I felt uncomfortable, confused and unaware of my rights. Having never been in a police station under these circumstances, I trusted the police officers would instruct me on what my rights were. I attempted to initiate this guidance by asking questions. I then asked if I could ride in the police car with Jermaine (I wanted to ensure his safety). The officer first questioned my relation to Jermaine and then agreed.

When we arrived at the other police district, we were asked the same general question as before. However, this time, Jermaine was asked a few questions about the alleged shooting. Throughout the brief questioning, Jermaine consistently stated his innocence by saying he knew nothing about the shooting. After Jermaine answered the officer's questions (in my presence), he was escorted to a back room. Minutes later, an officer followed him into the room and closed the door behind him. The officer was in the room with Jermaine approximately 10 to 15 minutes before coming out and signaling the detective (who was questioning me) to come here. I believe it was during this time the officers continued to question Jermaine alone. I was left sitting outside the in the hallway. I waited for about 45 minutes before realizing my other nephew was waiting outside in the car. I immediately jumped up and ran outside to see if he was o.k. When I returned, the officers were still in the room with Jermaine. I ended up waiting another 10

to 15 minutes before one of the detectives came out to talk to me. He walked over to where I was sitting and began telling me it wasn't necessary to wait around and I should go home. He explained they still had a lot to cover with Jermaine, so he wouldn't be going home. He stressed all I would be doing is waiting until they were through. When I asked how long it would take, he said... he wasn't sure, but it could take days. He told me to go home and I'd be contacted with new developments involving the case. This minor brush off left me feeling uneasy, so (once again) I decided to inquire about my rights, by asking questions. I asked the officer, "So you mean to tell me, all I can do at this point is go home and wait?"... And he assured me that was my only option.

However, it wasn't until three days later that I realized I had been terribly misled. The day after I left the police station, I waited the whole day for the detectives to call me...but they never did. The following day, I decided to call the station myself to find out what was going on... but was unsuccessful. I was told the detectives were out of the office, away from their desks, and on the phone. I left several messages, which resulted in a call back on the third day. It was at that time I learned Jermaine was being charge for the shootings on the north side. I was thoroughly confused as to what had happened from the time I left the station to now. I was eager to know what caused such a drastic change in the case. And at that moment I realized I was misled. Jermaine confirmed my suspicions when he called me later that day and asked me "why did I leave him at the police station alone". I explained that the officer advised me to leave. I assured him I never would have left if I knew I could stay. Not only did the officers mislead me into thinking my rights were limited, but they failed to inform me that by questioning Jermaine (a minor at the time of the incident), without an adult (guardian or attorney) present they were directly violating his Miranda Rights to Counsel.

If I were aware of our rights at that time, I would not have left my nephew alone at the police station to be questioned. I believe Jermaine was put in a high-pressure situation, and by him being alone, he felt scared, confused and pressured into confessing to a crime he did not commit.

Respectfully submitted,

*Diahann Flowers*

Diahann Flowers

*10-6-2000*
*Yvonne K Outlaw*

"OFFICIAL SEAL"
YVONNE D. OUTLAW
Notary Public, State of Illinois
My Commission Expires Oct. 10, 2001