IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., JERMAINE JAMESON, | ) ) ) | |
| Petitioner, | ) ) ) | No. 04 C 1547 |
| v. | ) ) | |
| DONALD A. HULICK, Warden, Illinois River Correctional Center, | ) ) ) ) ) | HONORABLE DAVID H. COAR |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jermaine Jameson's motion to vacate his sentence pursuant to 28 U.S.C. § 2254 is before this Court.[1] For the following reasons, the motion is denied.

**I. FACTS**

Petitioner was born in August 1980. On the afternoon of March 25, 1997, two victims were fatally shot by Petitioner during a minor altercation on a Chicago street. Petitioner was with a companion. About midnight of the same day, Petitioner and his aunt arrived at a district police station, and police took them to Area 3 Violent Crimes headquarters. Approximately 20 minutes after the arrival of Petitioner and his aunt at Area 3, Youth Officer Drochner met with both in an interview room. Drochner informed Petitioner of his *Miranda* rights and told Petitioner that he

---

[1] Donald A. Hulick is now the warden of Illinois River Correctional Center. Eugene Mcadory was the warden at the time this petition was filed. The Court hereby amends the case caption accordingly.

-1-

would be prosecuted as an adult if he was charged with first degree murder. Drochner also told Petitioner that he should ask if he needed anything. Petitioner's aunt gave Drochner the names of Petitioner's parents. Petitioner's mother lived in New York. Drochner tried to contact Petitioner's father about noontime on March 26, 1997.

About 1:15 a.m. on March 26, 2007, Detective Killacky spoke to Petitioner for five minutes in the presence of Drochner and Petitioner's aunt. Petitioner did not make any admissions at this time. Petitioner was then placed in a lineup, where he was identified by Jerry Myvett. Myvett was an eyewitness to the shootings, and had known Petitioner since they were children. About this point, Petitioner's aunt left Area 3 in order to attend to "some emergency business." After the lineup, Petitioner was placed alone in a locked interview room, but he was not handcuffed. At 4:55 a.m., Drochner, Killacky and an assistant State's Attorney entered the interview room. The latter advised defendant of his *Miranda* rights before speaking to petitioner for one-half hour. During this conversation, petitioner admitted that he shot the victims. Petitioner was then left alone in the locked interview room.

A court reporter was requested, and at approximately 7:30 a.m. Petitioner's companion gave a court-reported statement. Two hours later, petitioner gave a 17-page court-reported statement in which he confessed to the shootings in the presence of an assistant State's Attorney, Killacky and Drochner. Before giving the statement, Petitioner was again advised of his *Miranda* rights. In the statement, Petitioner said that while at Area 3 he had been treated "all right" and given a bag of potato chips and a soda. He was also allowed to use the washroom. Petitioner responded that he gave the statement freely and voluntarily, and no one had threatened or

promised him anything. The statement was transcribed, and at 11:!5 a.m. Petitioner made corrections to the statement which he signed.

On July 1, 1998, following a bench trial, Petitioner was convicted of two murders and an unlawful use of a weapon by the Circuit Court of Cook County, and was sentenced to life years of imprisonment for the murders, and a three-year concurrent term for unlawful use of a weapon. Petitioner appealed his convictions and sentences to the Illinois Appellate Court, First District, where he raised for review the claim that his confession was involuntary because it was made under coercive circumstances. In an unpublished order dated June 23, 2000, the appellate court affirmed Petitioner's convictions and sentences.

Petitioner then filed a petition for leave to appeal to the Illinois Supreme Court, asking the Illinois Supreme Court to review "whether, where the police isolated juvenile Jermaine Jamieson for seven hours throughout the late night and early morning, frustrated his aunt's attempt to arrange the aid of an adult relative interested in his welfare, and gave him almost nothing to eat for nine hours, and where the youth officer showed no interest in his rights, Jamieson's confession was made under coercive circumstances rendering it involuntary." On October 4, 2000, the Supreme Court of Illinois denied the petition for leave to appeal.

On February 2, 2001, Petitioner filed a pro se post-conviction petition with the Circuit Court of Cook County. The petition alleged the following grounds of relief: (1) ineffective assistance of trial counsel for failure to interview or call Petitioner's aunt, Diahann Flowers; (2) petitioner's life sentence is unconstitutional based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).  On March 30, 2001, the circuit court dismissed the petition.

On October 26, 2001, the Assistant Public Defender who represented Petitioner on appeal filed a motion for leave to withdraw. Petitioner filed a *pro se* response on February 28, 2002, in which he alleged that trial counsel was ineffective for failing to interview or call as Petitioner's aunt as a witness. On March 29, 2002, the Illinois Appellate Court, First District, granted counsel leave to withdraw and affirmed the judgment of the circuit court dismissing petitioner's post-conviction petition.

On June 7, 2002, Petitioner filed a petition for leave to appeal from the affirmance of the denial of his first post-conviction petition. He claimed that the counsel appointed to represent him on appeal from the denial of post-conviction relief conducted a cursory review of the issues, and the legal principles relied upon by the post conviction court should not have been so rigidly applied on the issue of ineffective assistance of counsel for failure to call petitioner's aunt as a witness. On October 2, 2002, the Illinois Supreme Court denied the petition.

On November 20, 2001, before the appeal of his first post-conviction petition was decided, Petitioner filed a *pro se* motion under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401), seeking relief from his sentence. Petitioner argued that his natural life sentence under 730 ILCS 5/5-8-1(a)(1)(c)(ii) was void because the public act which enacted the statute violated the single subject rule of the Illinois Constitution. The trial court treated the motion as a second post-conviction petition, and concluded that the issues raised by the Petitioner were non-meritorious. The petition was dismissed.

On March 12, 2002, Petitioner filed a notice of appeal from the dismissal of this second *pro se* post-conviction petition. On October 16, 2002, the assistant public defender who represented petitioner on appeal filed a motion for leave to withdraw as appellate counsel. On

February 13, 2003, Petitioner filed a *pro se* response to the motion to withdraw. Petitioner argued that his sentence was unconstitutional under 730 ILCS 5/5-8-1(a)(1)(c)(ii), and that the trial judge abused his discretion in sentencing petitioner to natural life without parole since he was a juvenile at the time he committed the two murders, had no criminal history, and the court failed to consider rehabilitative potential. On April 24, 2003, the Illinois Appellate Court, First District, granted counsel leave to withdraw and affirmed the judgment of the circuit court's dismissal of petitioner's second post-conviction petition.

On July 3, 2003, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court the affirmance of the dismissal of his second post-conviction petition. Petitioner argued that (1) petitioner's natural life sentence was void because it violated the single subject rule in Illinois' Constitution, (2) the trial judge abused his discretion in sentencing Petitioner, and (3) 730 ILCS 5/5-8-1(a)(1)(c)(ii) is unconstitutional because it is inherently unfair to minors at sentencing. On October 7, 2003, the Illinois Supreme Court denied the petition for leave to appeal.

On February 27, 2004, Petitioner filed the instant habeas petition in which he raises the following seven claims: (1) his confession was involuntary because it was coerced; (2) ineffective assistance of trial counsel for failing to call Petitioner's aunt as a witness; (3) Petitioner's life sentence is unconstitutional without a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000); (4) Petitioner was sentenced under an unconstitutional state sentencing law in violation of *Apprendi*; (5) the trial court abused its discretion in sentencing Petitioner to natural life; (6) the sentencing statute is inherently unfair to minors at

sentencing; and (7) ineffective assistance of appellate counsel for failure to raise the aforementioned claims on direct appeal.

## II. STANDARD OF REVIEW

28 U.S.C. §2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. §2254© (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994).

A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

## III. ANALYSIS

### A. Exhaustion of State Court Remedies

The question of exhaustion "refers only to remedies still available at the time of the federal petition," such that an applicant for federal could still obtain relief if he sought it in the

state system. *Engle v. Isaac*, 456 U.S. 107, 125-26 (U.S. 1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-52 (U.S. 1999). Under such circumstances, where state remedies are still available at the time of the federal petition, the federal court must generally abstain from intervening in the interest of comity. *Id*. In the present case, there is no argument as to exhaustion; Respondent has already conceded that petitioner has exhausted his state court remedies.

**B. Procedural Default**

The procedural default doctrine ensures that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that "they give state courts a sufficient opportunity to decide those claims before doing so." *Id.* at 853. Procedural default occurs when a petitioner failed to present a federal constitutional claim fairly to the state courts to be decided before raising it in the federal habeas proceeding, *Spreitzer v. Schomig*, 219 F.3d 639, 644-45 (7th Cir. 2000); or when the state court rejected the claim on an independent and adequate state law ground, *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A claim that is otherwise barred for procedural default will only be cognizable in federal habeas proceedings if the petitioner can show "cause for the procedural default and actual prejudice as a result of the alleged violation of federal law," or can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478 (U.S. 1986). Respondent contends that all but the first of Petitioner's claims were procedurally defaulted.

Petitioner failed to raise his second claim–ineffective assistance of trial counsel for failing to interview and call Petitioner's aunt as a witness–on direct appeal. Instead, Petitioner

raised the issue in a post-conviction petition. Under the Illinois Post-Conviction Hearing Act, post-conviction petitioners are meant to address issues that were not, and could not have been, previously addressed. Thus, under Illinois law, an issue in a post-conviction petition is waived (i.e. barred by principles of *res judicata*) when the issue was raised at trial or on direct appeal, or could have been, but was not, raised on direct appeal. *People v. Scott*, 194 Ill. 2d 268 (Ill. 2000); *People v. Moore,* 177 Ill.2d 421, 427, 686 N.E.2d 587, 591 (1997).[2] Petitioner's claim of ineffective assistance of trial counsel for failing to interview and call Petitioner's aunt as a witness is a matter of record, and could have been, but was not, raised on direct appeal. Thus, under Illinois law, the post-conviction petition was barred by principles of *res judicata*. Further, Petitioner has not shown cause for not bringing the claim on direct appeal, nor as petitioner shown that there is "reasonable probability" that his aunt's testimony would have resulted in a different outcome, as required for prejudice. *Strickler v. Greene*, 527 U.S. 263 (1999). Because this issue was not raised on direct appeal, and there is no showing of cause or prejudice, Petitioner's second claim is procedurally defaulted.

Petitioner's third claim alleges due process violations for imposing a life sentence in a trial without a jury in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). Respondent claims that Petitioner did not bring this claim on appeal to the intermediate appellate court, and failed to include it in his petition for leave to appeal following the affirmance of the dismissal of his first post-conviction petition. Under *O'Sullivan v. Boerckel*, the procedural

---

[2]This is different from a 28 U.S.C. §2255 habeas petition under federal law, where an ineffective assistance of counsel claim may be raised in a post-conviction petition regardless of whether the claim was, or could have been, raise on direct appeal. *Massaro v. United States*, 538 U.S. 500 (U.S. 2003).

default doctrine in a federal *habeas* case requires appeal to the highest state court in both direct appeals and post-conviction appeals. 526 U.S. 838 (U.S. 1999). Thus, any issue raised in a federal habeas case must have been properly presented to the highest state court on a post-conviction petition. The record indicates that Petitioner did not raise the issue of unconstitutionality for imposing a life sentence without a jury in state appellate court, neither is there a showing of cause or prejudice for the default in state court. Thus, Petitioner's third claim is procedurally defaulted.

Petitioner's fourth claim contends that (1) 730 ILCS 5/5-8-1(a)(1) is unconstitutional on its face under *Apprendi*, because there is no provision in 5-8-1 for a jury to determine whether or not a natural life sentence should be imposed, and (2) Section 5-8-1(a)(1)(c)(ii) was also unconstitutional because it was contained in Public Act 89-203, which violated the "single subject" rule in the Illinois constitution. As to issue (1), Petitioner raised a constitutional challenge under *Apprendi* in the first post-conviction petition, but did not directly address this issue in his intermediate appeal of the first post-conviction petition. However, the Appellate Court of Illinois nevertheless ruled on the issue in its March 29, 2002 Order. Petitioner then raised this issue to the Illinois Supreme Court in his June 7, 2002 petition for leave to appeal. Thus, the state court addressed it on the merits at the trial and appellate levels and the Illinois Supreme Court was given adequate opportunity to decide the issue. Under these circumstances, issue (1) of the fourth claim is not procedurally defaulted, as the state courts at all levels had an adequate opportunity to rule on the issue. Issue (2) was raised in the second post-conviction petition (or the Motion for Relief from Judgment), and was dismissed by the Circuit Court of Cook County. Under 725 ILCS 5/122-1(2)(f), a petitioner may only bring one post-conviction

petition before the court, unless the court grants leave. In the circuit court's second post-conviction petition opinion, it stated that "petitioner failed to raise this claim in [the first post-conviction] petition, [and therefore] the claim is deemed waived and is barred from consideration in this proceeding." Clearly, the circuit court did not grant leave. Because Petitioner did not timely raise issue (2) in the first post-conviction petition, and did not obtain leave of court to bring another petition, issue (2) is procedurally defaulted. Thus, issue (1) of Petitioner's fourth claim is not procedurally defaulted, and issue (2) of Petitioner's fourth claim is procedurally defaulted.

Petitioner's fifth claim alleges abuse of judicial discretion by Judge Morrissey in the preparation of Petitioner in going to trial, and in the sentencing hearing held pursuant to Section 5-8-1(a)(1)(c)(ii). An abuse of judicial discretion claim pertains to a matter of record, and is properly brought on direct appeal. As discussed above, where an issue could have been, but was not, brought on direct appeal, it is waived in the post-conviction petition on principles of *res judicata*. *People v. Scott*, 194 Ill. 2d 268 (Ill. 2000); *People v. Moore,* 177 Ill.2d 421, 427, 686 N.E.2d 587, 591 (1997). Further, even if the claim was not barred by failure to appeal, it is waived for failure to raise it in the first post-conviction petition. Under the Illinois post-conviction relief statute, any constitutional claim not raised in the first post-conviction petition is waived for the purposes of supplementary post-conviction petitions, unless the court grants leave. 725 ILCS 5/122-1(2)(f). Thus, because Petitioner's fifth claim was not raised on direct appeal or in the first post-conviction petition, and there is no showing of cause or prejudice, it is procedurally defaulted.

Petitioner's sixth claim alleges that Section 5-8-1(a)(1)(c)(ii) is unconstitutional because it is inherently unfair to a minor, as it allows life sentences without considering rehabilitation. This claim was first raised in Petitioner's February 13, 2003 Motion in Opposition to Motion to Withdraw. It was not raised in the first post-conviction petition, nor was it raised in the Petitioner's Motion for Relief from Judgment, which the trial court treated as a second post-conviction petition. Thus, under Illinois post-conviction relief statute, the claim is waived. 725 ILCS 5/122-1(2)(f). Petitioner has made no showing of cause or prejudice, and his sixth claim is procedurally defaulted.

Finally, Petitioner's seventh claim asserts that petitioner was denied effective assistance of counsel when his appellate counsel failed to argue the above stated collateral review claims. Petitioner did not raise this ineffective assistance of counsel claim in the state courts, and there is no showing of cause or prejudice. Thus Petitioner waived his right to present it in federal court. The seventh claim is procedurally defaulted.

Petitioner's second, third, fifth, sixth and seventh claims in his habeas petition are procedurally defaulted. Issue (2) of Petitioner's fourth claim is also procedurally defaulted. Petitioner has not made any demonstration that failure to consider these claims will result in a "fundamental miscarriage of justice." *Id.* Thus, this court will proceed to address only Petitioner's first habeas claim and issue (1) of Petitioner's fourth claim on the merits.

**C. On the Merits**

Petitioner's habeas petition must be evaluated under 28 U.S.C. § 2254, where habeas relief is warranted when the state court's adjudication of a claim "was contrary to, or involved an

unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996). A state court decision is contrary to Supreme Court precedent if it is inconsistent with the Supreme Court's treatment of a materially identical set of facts, or if the state court applied a legal standard that is inconsistent with the rule set forth in the relevant Supreme Court precedent. *Gilbert v. Merchant*, 2007 U.S. App. LEXIS 13371 (7th Cir. 2007). A state-court decision constitutes an unreasonable application of Supreme Court precedent within the meaning of § 2254(d)(1) when, although it identifies the correct legal rule, it applies that rule in a way that is objectively unreasonable. *Id*. A federal habeas court's own disagreement with a state court's analysis is not sufficient to meet this standard; rather, the state court's analysis must lie well outside the boundaries of permissible differences of opinion in order for the habeas court to characterize it as an unreasonable application of Supreme Court precedent. *Id*.

### I. Involuntary Confession

Petitioner claims that his confession was involuntary because of coercive circumstances. Specifically, Petitioner asserts that he was held several hours throughout the night and early morning; that the police frustrated his aunt's attempt to arrange for adult presence; that he was deprived of food, water and sleep for nine hours; and that the youth officer showed no interest in his rights. In reviewing the voluntariness of petitioner's statements, the Illinois Appellate Court stated:

> In the present case, defendant came to the police station about midnight, thereby establishing the time frame for his interrogation. He was accompanied by his aunt who remained with him for the next two hours. Defendant's mother lived in New York, and the location of his father was never fully disclosed in this record. In this

latter regard, we note that during defendant's cross-examination of the youth officer on the motion to suppress the confession, the officer gave an unresponsive answer to a question, stating that defendant "did not want his father to be notified." Defense counsel then cut off a further response and matter was not pursued.

Additionally, the record shows that defendant was familiar with the criminal justice system based on his prior delinquency adjudications. Further, he understood his *Miranda* rights, the police questioning was not continuous, defendant was not handcuffed although he was locked in an interview room after being identified in a lineup, he was provided with a soft drink and access to washroom facilities, and there was no valid showing of any police threats or promises. These are all considerations which the supreme court found to weigh in favor of a juvenile's voluntary statement. *In re G.O.*, 191 Ill. 2d at 56.

Moreover, the duration of respondent's detention between the time he made his oral admissions and the court-reported statement is explained by the fact that about 7:30 a.m., the same court reporter was taking a statement of defendant's companion. Defendant's statement began about two hours later. Thus, nothing is availing to defendant's argument on appeal which is evident from the time frame or circumstances of his detention.

Rule 23 Order in *People v. Jameson*, I-98-3513 (Ill. App.Ct. 1st Dist. June 23, 2000).

In a similar case, the Seventh Circuit has refused to interpret Supreme Court precedent as to "adopt a rule that juveniles' confessions to adult crimes in that the absence of a friendly adult were per se involuntary.". *Hardaway v. Young*, 302 F.3d 757 (7th Cir. 2002). In *Hardaway*, the petitioner was taken into custody at age fourteen as a murder suspect. His parents never came to the station and petitioner never asked for them. He appeared to understand his *Miranda* rights and had appeared in juvenile court numerous times with counsel. After being held for a day but not otherwise being coerced, petitioner was confronted with legitimate witness testimony that contradicted his statements, and finally confessed. *Id*. The Seventh Circuit held that petitioner's confession was valid and voluntary.

In the present case, Petitioner was sixteen years old, two years older than the petitioner in *Hardaway*. Whereas in *Hardaway*, no adult showed up, in the instant case, Petitioner's aunt was present for a portion of the night; Petitioner's mother was in New York; and it is unclear that Petitioner wanted his father to be present or that his father could be found. Further, petitioner was kept at the station for approximately 11 hours, where as the petitioner in *Hardaway* was in custody for a day. In those eleven hours, Petitioner was given a bag of potato chips to eat, and was able to go to the washroom. Like the petitioner in *Hardaway*, Petitioner had familiarity with the criminal justice system and understood his *Miranda* rights. Therefore, in light of *Hardaway*, the state court's conclusions are reasonable and consistent with Supreme Court precedent, and this court does not grant habeas relief for the petitioner on this claim.

### ii. Constitutionality of 730 ILCS 5/5-8-1(a)(1) under *Apprendi*

Petitioner contends that he was denied due process and equal protection under the law, because he was sentenced under a statute that was unconstitutional on its face. Petitioner asserts that 730 ILCS 5/5-8/1(a)(1) is unconstitutional because there is no provision for a jury to determine whether a natural life sentence should be imposed, and a judge alone making that determination violates *Apprendi v. New Jersey*.

In *Apprendi*, the Supreme Court "required that a jury on the basis of proof beyond a reasonable doubt make the factual determination authorizing an increase in the maximum prison sentence,"; that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. 2348 (U.S. 2000). In *Apprendi*, a jury convicted the defendant of a second-degree offense for unlawful possession of a prohibited weapon, where the maximum

sentence was 10 years. The trial judge then, in a separate proceeding without the jury, concluded that the defendant violated a state "hate crime" statute, and sentenced the defendant to 12 years. The Supreme Court ruled that, in a jury trial, the judge cannot increase the sentence beyond the statutory maximum for the crime convicted by the jury. Under *Apprendi*, if the trier of fact (the jury) makes factual findings that convict the defendant of a certain crime, that is the crime to which a judge must limit his punishment. The judge is not free to make further factual determinations or convictions on his own. If the judge wishes to increase the punishment beyond the prescribed statutory maximum for the jury-convicted crime, the sentence must be submitted to the jury.

In the present case, Petitioner was tried in a bench trial, not a jury trial. In a bench trial, the right to a jury is waived by the defendant, and the judge becomes the trier of fact. As such, the factual findings determined by the judge will determine the appropriate sentencing. According to the appellate court record, Petitioner was convicted of two murders in the bench trial, and Petitioner has not contested that statement. Therefore, although this court does not have the trial court record, for purposes of this opinion, this court relies on the record in the state appellate court's June 23, 2000 Order, stating that Petitioner was found by the trier of fact to have committed two murders. Under 730 ILCS 5/5-8-1(c)(ii), a natural life sentence may be imposed when a person is convicted of murdering more than one victim. Given the finding that Petitioner murdered two victims, Petitioner's sentence was well within the statutory range for the crime determined by the trier of fact. Thus, both for the reasons that the instant case is a bench trial and because the sentence given does not exceed the statutory maximum, the case is not rendered unconstitutional by *Apprendi*. This court does not grant habeas relief for this claim.

## IV. CONCLUSION

For the foregoing reasons, Jameson's Petition for a Writ of Habeas Corpus is DENIED. This case is closed.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **June 18, 2007**